ROBERTS, APPELLANT, *v.*
ROBERTS, APPELLEE.

(No. 84AP-1026 — Decided
June 11, 1985.)

*William W. Brown,* for appellant.
*Orval E. Fields II,* for appellee.

NORRIS, J. Plaintiff appeals from an order of the trial court which overruled her motion to terminate defendant's visitation with their three minor children, ages eight, five, and one and one-half, and, instead, modified the court's previous visitation order, found in the decree of divorce, by requiring that defendant exercise his visitation in the Columbus area and prohibiting him from having any unrelated male present during visitation.

According to the testimony adduced at the hearing, defendant is an admitted homosexual who now lives in Boston, Massachusetts, with a male companion in a homosexual relationship. On a few occasions, plaintiff, who is the children's custodian, had permitted defendant to visit with the children in Franklin County in her presence. She had forbidden defendant to allow his male companion to participate in visitation, and, when defendant insisted on her removing these restrictions, plaintiff filed her motion to terminate visitation.

At the hearing, plaintiff introduced the testimony of two psychologists, who agreed that such young children would be harmed significantly were they to learn that their father is a homosexual. One psychologist believed that:

"* * * [V]isitation should be terminated unless there is some type of guarantee that the children will not be exposed to the knowledge that their father' is homosexual, or to behavior which would lead them to suspect that.

"* * * [T]he knowledge can be gained either by him telling them, by third party telling them, or by them drawing that conclusion, either through his behavior or through the situation of him visiting with a male friend."

The other psychologist concluded that visitation should be terminated to prevent harm to the children.

Plaintiff also introduced as an exhibit a book entitled "Loving Someone Gay," which defendant had given to her,

and which bore this notation from defendant:

"* * * that 'Someone' was your husband and is the father of three wonderful children!

"Please read in an effort to understand me and most of all for our children's sake!

"Love, Bob."

The expert witnesses disagreed with the positions taken by the author of the book, among them that a homosexual parent should be open with his children concerning his sexual preference, at the earliest age possible.

Defendant admitted that he had attempted to involve his male companion in visitation; said he had never tried to explain his homosexuality to his children; but that, "[i]f they ask me directly, I can't lie to my children."

The referee who conducted the hearing concluded that:

"* * * [I]t is not in the best interests of the children for them to be exposed to their father's lifestyle at this time. However, a complete termination of visitation is not warranted. Visitation in the past has been in plaintiff's presence. Defendant's male companion should not be present.

"It is therefore recommended * * * that visitation be modified such that defendant may exercise visitation in the Columbus area only and that defendant be prohibited from having any unrelated male present during said visitation. * * *."

The trial court overruled plaintiff's objections, and adopted the referee's report and recommendation.

Plaintiff raises two assignments of error:

"1. The trial court abused its discretion in that its modification order is against the manifest weight of the evidence presented.

"2. The trial court's modification order is contrary to and in direct conflict with its own findings of facts and thereby constitutes an abuse of discretion."

The assignments of error are interrelated and will be considered together. Because the trial court was vested with the discretion to make a visitation order which was "just and reasonable," permitting defendant to visit the children "at the time and under the conditions" it deemed proper (R.C. 3109.05), the standard to be applied to our review of the trial court's action is whether, in view of the evidence, it abused its discretion in the manner in which it modified the existing visitation order.

The primary consideration guiding and limiting the exercise of a trial court's discretion in setting a visitation order is the welfare and best interests of the minor children. Ordinarily, it will be in the best interests of children that they receive the love, affection, training, and companionship of their noncustodial parent. See *Porter* v. *Porter* (1971), 25 Ohio St. 2d 123 [54 O.O.2d 260]. This is not the case, however, where the evidence establishes that exercise of visitation will be harmful to the welfare of the children; in this event, the right of the noncustodial parent to visit with his children can be limited, or, under extreme circumstances, prohibited altogether.

This much is clear from uncontroverted testimony in the record:

1. The children would be harmed by knowledge that their father is a homosexual;

2. Defendant had repeatedly attempted to have his male lover present when he visited with the children (defendant also invited plaintiff and the children to visit him and his male companion in their one-room apartment);

3. Defendant rejected any conditions being placed on his exercise of visitation; and

4. Defendant would reveal his homosexuality to the children if asked.

Although the trial court made an effort to protect the children, we are

troubled by the order's incomplete response to the uncontroverted evidence concerning the harm threatened to the children, the father's unwillingness in the past to acknowledge that threat, and his continued indifference to it. He presented no expert testimony to controvert plaintiff's evidence that knowledge of his homosexual lifestyle would be detrimental to the children's well-being. Nor did he present evidence that visitation would be in the children's best interests. His outlook at the hearing may be characterized as the attitude that his was a socially acceptable alternative lifestyle from which his children need not be shielded, and it was not for the state to limit visitation with his children.

Actually, given its concern for perpetuating the values associated with conventional marriage and the family as the basic unit of society, the state has a substantial interest in viewing homosexuality as errant sexual behavior which threatens the social fabric, and in endeavoring to protect minors from being influenced by those who advocate homosexual lifestyles. See, *e.g., Doe* v. *Commonwealth's Attorney* (E.D. Va. 1975), 403 F. Supp. 1199, affirmed (1976), 425 U.S. 901. See, also, *Dronenburg* v. *Zech* (C.A.D.C. 1984), 741 F. 2d 1388.

In view of the testimony by one of the psychologists that visitation would not be harmful if the children could be shielded from the knowledge that their father is a homosexual, we are unable to say that the trial court was required to terminate visitation. However, the trial court abused its discretion by failing to impose conditions upon defendant's exercise of visitation, which would protect the welfare and best interests of the children. Upon remand, the trial court may conclude that it is unable to devise adequate safeguards, in which event its only alternative will be to terminate visitation until the children attain such

an age that they will not be harmed or influenced by learning of their father's homosexuality. Should the trial court conclude that adequate safeguards are available, it would appear that they should, at a minimum, include the limitations appearing in the order appealed from, together with the added requirements that defendant not reveal his lifestyle to the children, and that visitation take place in plaintiff's presence, or under other sufficiently controlled circumstances.

The assignments of error are sustained, the order of the trial court is reversed, and this cause is remanded to the trial court for further proceedings according to law and consistent with this opinion.

*Judgment reversed and cause remanded.*

STRAUSBAUGH and WHITESIDE, JJ., concur.