[Cite as *Devito v. Devito*, 2022-Ohio-2563.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ELIZABETH A. CROSS DEVITO, | : | APPEAL NO. C-210523 |
| | | TRIAL NO. DR-1901095 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| RICHARD L. DEVITO, | : | |
| | : | |
| Defendant-Appellant. | : | |


Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Case Remanded

Date of Judgment Entry on Appeal: July 27, 2022

*Aaron J. Manter,* for Plaintiff-Appellee,

*Andrew G. Ice,* for Defendant-Appellant.

**BOCK, Judge.**

**{¶1}** Defendant-appellant Richard L. Devito ("Husband") appeals the domestic relations court's entry granting plaintiff-appellee Elizabeth A. Cross Devito ("Wife") a divorce. Husband challenges the parenting-time order and distributive award in the divorce decree. For the following reasons, we affirm the domestic relations court's judgment in part, reverse it in part, and remand the case for further proceedings consistent with this opinion.

## I.     Facts and Procedure

**{¶2}** Wife and Husband were married on October 10, 2014. The following year, Wife gave birth to their daughter. But in 2016, Husband was arrested and jailed for producing child pornography. Two years later, he pleaded guilty to one count of producing child pornography. *See United States v. DeVito*, S.D.Ohio Nos. 1:16-CR-115 and 1:121-CV-093, 2021 U.S. Dist. LEXIS 201884 (Oct. 19, 2021).

**{¶3}** In 2019, the federal trial court sentenced Husband to a 30-year term of incarceration in a federal prison in South Carolina. *Id.* That year, Wife filed for divorce. In 2021, the magistrate held a hearing to determine the division of property and parental rights. The evidence consisted of financial documents, text messages, letters from Husband to Wife, and testimony from Wife, Husband, and Husband's mother.

### Magistrate's Decision

**{¶4}** In her decision with findings of fact and conclusions of law, the magistrate explained, "The division of property is not equal but is an equitable division given * * * that [Husband] * * * is serving 360 months in a federal prison and will not be in a position to maintain employment, earn income or help support" the parties' child. In addition, Wife was "entitled to a distributive award due to [Husband's] criminal actions that lead [sic] him to be incarcerated in prison for 360 months." While

2

the magistrate found that Husband had insufficient income to support their daughter, he had "other assets, including his retirement accounts." The magistrate determined that Husband "would have been available to pay support and $923.56 for 201 months" for a total of $185,635.56 if he were not incarcerated.

{¶5} The magistrate awarded Husband an "F350 Truck" and his inheritance from his deceased father's estate—interest in real property and a boat. The magistrate designated the 2017 Ford Explorer as Wife's separate property. And Wife was awarded her current residential property. The magistrate found that Husband received $10,275.32 from Wife and was responsible for $25,899.56 worth of "marital debts and expenses" related to their daughter. Thus, the magistrate awarded Wife $28,546.72 "currently on deposit in [Wife]'s name" free and clear of any claim of Husband.

{¶6} Next, the magistrate identified five retirement accounts. The magistrate found that "[Wife] has the following retirement accounts": a Fidelity Investment Stock Plan, a U.S. Bank Pension Account, and a U.S. Bank 401(k) Savings Plan. In addition, the magistrate found that "[Husband] has the following retirement accounts": a Linamar Holdings 401(k) Savings and a PNC Bank IRA. The magistrate awarded Wife "the entirety of the retirement plans and investment accounts, including any separate property portion, free and clear of any claim of [Husband]."

{¶7} Turning to child custody and parenting time, the magistrate designated Wife the residential parent and legal custodian of their daughter and ordered: "[Husband] shall have in-person visitation with their child at [Wife]'s discretion and shall have phone contact with their child at [Wife]'s discretion." The magistrate made detailed findings under the relevant parenting-time factors listed in R.C. 3109.051(D). The magistrate concluded that it was in the child's best interest not to require her to visit Husband in prison, and that "any contact between [Husband] and [his daughter]

3

take place in the presence and under the supervision of [Wife]."

{¶8} The magistrate found that Husband's incarceration in a federal prison in South Carolina limited his relationship and interactions with his daughter. *See* R.C. 3109.051(D)(1)-(3). At the time, their five-year-old daughter was "well-adjusted" to life with Wife. *See* R.C. 3109.051(D)(4)-(5). In addition, Husband was convicted for an offense involving abused children, and Wife believed unsupervised contact between Husband and their daughter posed a risk to their daughter's health and safety. *See* R.C. 3109.051(D)(7) and (11). The magistrate found that Husband lacked an "understanding of the seriousness of his own behaviors and conduct" and demonstrated an "unwillingness to take responsibility for his actions." *See* R.C. 3109.051(D)(9) and (16). Further, the magistrate found that Wife had a history of ensuring Husband access to their daughter. *See* R.C. 3109.051(D)(10).

{¶9} Wife and Husband filed objections to the magistrate's decision. The domestic relations court denied Husband's objections, sustained Wife's objection, and adopted the magistrate's decision with a modification. The domestic relations court stated, "Under no circumstance must the child be forced to communicate with [Husband], especially at a set time or unsupervised, given the nature of [Husband]'s incarceration." The domestic relations court identified a Best Buy 401(k) plan in Husband's name and awarded Wife "the entirety of the retirement plan free and clear of any claim of [Husband]."

{¶10} The domestic relations court issued the divorce decree and terminated the marriage. The decree incorporated the magistrate's decision, as modified by the court's ruling on the objections.

{¶11} Husband appeals and raises three assignments of error.

4

## II. Law and Analysis

Parenting Time

**{¶12}** In his first assignment of error, Husband challenges the allocation of parenting time. He contends that the discretion afforded to Wife in the parenting-time order was unjust and unreasonable under R.C. 3109.051.

**{¶13}** A domestic relations court "enjoys broad discretion when setting parenting time and determining the conditions under which parenting time will take place." *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 42. A court abuses its discretion when it " 'exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority.' " *State v. Austin*, 1st Dist. Hamilton Nos. C-210140 and C-210141, 2021-Ohio-3608, ¶ 5, quoting *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. In other words, an abuse of discretion "implies that the court's attitude, in reaching its decision, was unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶14}** Parenting time "ha[s] the potential to affect countless aspects of a child's life, including the child's relationships with his or her parents, the child's relationships with extended family, the child's social and cultural upbringing, and even, in some unfortunate cases, the child's physical and emotional security." *Kelm v. Kelm*, 92 Ohio St.3d 223, 224-225, 749 N.E.2d 299 (2001). When a divorce proceeding involves a child, the domestic relations court "shall make a just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child at the time and under the conditions that the court directs." R.C. 3109.051(A). If possible, the decree "shall ensure the opportunity for both parents to have frequent

and continuing contact with the child" unless contact with a parent is not in the best interest of the child. *Id.*

{¶15} While a court enjoys discretion when establishing the conditions of parenting time, it "must follow the dictates of R.C. 3109.051." *Cwik* at ¶ 42. And the court "must apply the factors and determine the parenting time plan that is in the child's best interest." *In re J.T.*, 2d Dist. Montgomery No. 26839, 2016-Ohio-602, ¶ 36, citing *Braatz v. Braatz*, 85 Ohio St.3d 40, 45, 706 N.E.2d 1218 (1999). When establishing a parenting-time or visitation schedule, R.C. 3109.051(D) identifies 16 nonexhaustive factors that the domestic relations court must consider, including:

(1) The prior interaction and interrelationships of the child with the child's parent * * *;

(2) The geographic location of the residence of each parent * * * ;

(3) The child's and parents' available time;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) * * * the wishes and concerns of the child * * *;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of the parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * * and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent* * *

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶16} The domestic relations court "shall include in its final decree a specific schedule of parenting time for that parent." R.C. 3109.051(A). Yet, the court "may limit or restrict visiting rights of a party in order to further the child's best interest." *Callender v. Callender*, 7th Dist. Carroll No. 03-CA-790, 2004-Ohio-1382, ¶ 31.

{¶17} The magistrate's decision, as incorporated into the divorce decree, ordered that "[Husband] shall have in-person visitation with their child at [Wife]'s discretion and shall have phone contact with their child at [Wife]'s discretion." The

7

magistrate found that it was in the child's best interest that all contact between Husband and his daughter take place in the presence of Wife. The magistrate found that "not granting an order requiring [the child] to visit [Husband] at prison" was in the child's best interest. The domestic relations court ordered "that under no circumstance must the child be forced to communicate with [Husband], especially at a set time or unsupervised, given the nature of [Husband]'s incarceration."

{¶18} Husband argues that the award of parenting time at the discretion of Wife was unjust and unreasonable. In particular, Husband maintains that Wife "can cut off all contact with the child while the child is in her care." In response, Wife argues that the magistrate carefully considered the enumerated factors under R.C. 3109.051(D) when determining parenting time. Wife maintains that the magistrate's decision is reasonable and just, considering the detailed analysis of statutory factors.

{¶19} After reviewing the record, we find that the domestic relations court's parenting-time schedule was not unwarranted or unreasonable. The magistrate considered, in her detailed findings, the enumerated statutory factors under R.C. 3109.051(D). Those findings were supported by the evidence in the record. At the hearing, Wife expressed concern about the negative consequences of unsupervised contact with Husband and mandatory in-person visitation. Still more, Wife testified that, upon her daughter's request, she would take her daughter to visit Husband in prison. When Husband called his daughter, Wife entrusted their daughter with the decision to speak with Husband. Significantly, testimony established that Husband "never called on a schedule," and his daughter's schedule was "fluid." That testimony, combined with the facts and circumstances surrounding Husband's conviction, supports the decision to limit the child's unsupervised contact with Husband at the discretion of Wife. The parenting-time schedule was reasonable considering evidence

produced at trial. Therefore, we find no abuse of discretion and overrule Husband's first assignment of error.

Distributive Award

{¶20} Husband's second and third assignments of error challenge the distributive award of Husband's separate property to Wife. In both his second and third assignments of error, Husband argues that the distributive award of his property was an abuse of discretion. First, he argues that the court failed to designate the Best Buy 401(k) Plan, the Linamar 401(k) Plan, and his inheritance of approximately $7,500 to $8,000 in cash from his deceased grandmother as separate property. Second, he contends that his separate property was erroneously awarded to Wife.

{¶21} We review a domestic relations court's property division in a divorce proceeding for an abuse of discretion. *Dunn v. Dunn*, 1st Dist. Hamilton Nos. C-010282 and C-010292, 2002-Ohio-6247, ¶ 12, citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981). R.C. 3105.171 governs the division of property in a divorce, and a distributive award made "without following all of R.C. 3105.171's requirements" is an abuse of discretion. *Akins v. Akins*, 7th Dist. Carroll No. 12 CA 882, 2014-Ohio-4432, ¶ 57, citing *Baker v. Baker*, 4th Dist. Washington No. 07CA24, 2007-Ohio-7172, ¶ 31.

{¶22} In divorce proceedings, the domestic relations court shall "determine what constitutes marital property and what constitutes separate property." R.C. 3105.171(B). The statute imposes a mandatory duty on the trial court to classify property as marital or separate before it makes any property division. *Girton v. Girton*, 4th Dist. Athens No. 08CA30, 2009-Ohio-4458, ¶ 6, citing *Childers v. Childers*, 4th Dist. Scioto No. 05CA3007, 2006-Ohio-1391, ¶ 14. The findings must be in "sufficient

detail to allow for meaningful appellate review." *Girton* at ¶ 6, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988), paragraph two of the syllabus.

**{¶23}** The parties' marital property consists of real or personal property owned by either spouse, including retirement benefits acquired during the marriage and interest in those benefits. R.C. 3105.171(A)(3)(i)-(iv). Marital property "does not include any separate property." *Boolchand v. Boolchand*, 1st Dist. Hamilton Nos. C-200111 and C-200120, 2020-Ohio-6951, ¶ 7. Separate property consists of, among other things, "property acquired before the marriage and certain other property, such as inheritances and gifts, acquired by one spouse during the marriage." *Id.* at ¶ 8. A spouse may retain separate property despite having comingled it with marital property, because "[a]s long as it is traceable, separate property retains its identity." *Id.,* citing R.C. 3105.171(A)(6)(b).

**{¶24}** Husband argues that the court failed to designate the Linamar and Best Buy retirement accounts, and approximately $7,500 to $8,000 of inheritance money, as his separate property. The magistrate and domestic relations court appeared to designate the two accounts as his separate property. While these findings were not a model of clarity, the retirement accounts were sufficiently identified as Husband's separate property. *See Girton* at ¶ 6.

**{¶25}** Yet, we find no mention of Husband's inheritance money, held in Wife's U.S. Bank retirement account, in the decree. Failing to determine whether this money was separate property was an error. At the hearing, Husband testified that he deposited approximately $7,500 to $8,000 that he had inherited from his grandmother into a savings account. Wife testified that she deposited $8,000 into a joint checking account, before transferring $30,000 into her U.S. Bank retirement

account. The property was traceable, and the court should have determined whether Husband's inheritance from his grandmother was separate property.

{¶26} Following a determination of whether property is marital or separate, the court "shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). The statute requires an equal division of marital property unless "an equal division of marital property would be inequitable." R.C. 3105.171(C)(1). Determining what is equitable requires a consideration of the factors listed in R.C. 3105.171(F). *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5.

{¶27} In addition to an equitable division of marital property, the court may make a distributive award. A distributive award is "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support." R.C. 3105.171(A)(1).

{¶28} Distributive awards may be made for several reasons. *See* R.C. 3105.171(E)(1)-(5). First, a distributive award may properly "facilitate, effectuate, or supplement a division of marital property." R.C. 3105.171(E)(1). Second, the domestic relations court "may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses" if dividing the marital property would be "impractical or burdensome." R.C. 3105.171(E)(2). But this type of distributive award requires a finding of impracticability or burden. *Akins*, 7th Dist. Carroll No. 12 CA 882, 2014-Ohio-4432, at ¶ 57, citing *Baker*, 4th Dist. Washington No. 07CA24, 2007-Ohio-7172, at ¶ 31. Third, a distributive award is proper "[i]f a spouse has engaged in financial misconduct." R.C. 3105.171(E)(4). Fourth, a distributive award is appropriate if "a spouse has substantially and willfully failed to disclose marital

property, separate property, or other assets." R.C. 3105.171(E)(5). When making a distributive award, the court is required to "make written findings of fact that support the determination that the marital property has been equitably divided." R.C. 3105.171(G).

{¶29} Husband argues that the distributive award was unreasonable or arbitrary due to the lack of evidence of financial misconduct. While the magistrate failed to cite to R.C. 3105.171(E) in her decision, she suggested that financial misconduct under R.C. 3105.171(E)(4) was the statutory basis for making the distributive award. In her "conclusions of law," the magistrate explained that a distributive award may be based on one spouse's "financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets." In her analysis, the magistrate found that Wife "is entitled to a distributive award due to [Husband]'s criminal actions that lead [sic] him to be incarcerated." The magistrate awarded most of the assets to Wife, including Husband's inheritance money and retirement accounts.

{¶30} Several appellate districts use a two-part test for determining financial misconduct. *See Elliot-Thomas v. Lewis,* 9th Dist. Summit No. 29164, 2019-Ohio-3870, ¶ 17. Under that test, a domestic relations court must find " '(1) a wrongdoing by one spouse that interferes with the other spouse's property rights and (2) that the wrongdoing results in profit to the wrongdoer or stems from an intentional act meant to defeat the other spouse's distribution of assets.' " *Id.,* quoting *Bucalo v. Bucalo*, 9th Dist. Medina No. 05CA0011-M, 2005-Ohio-6319, ¶ 30.

{¶31} Based on the reasoning in the magistrate's decision and the domestic relations court's modification, the award was unreasonable and arbitrary. The magistrate's decision suggested that the distributive award was made under R.C.

12

3105.171(E)(4). But there is no evidence that Husband's wrongdoing interfered with Wife's property rights, that Husband profited from his wrongdoing, or that the misconduct was committed to defeat Wife's property rights.

{¶32} In response, Wife argues that a court's authority to make a distributive award exists beyond R.C. 3105.171(E), because R.C. 3105.171(D) states "[e]xcept as otherwise provided in division (E) of this section or by another provision of this section, the court shall disburse a spouse's separate property to that spouse." She reads that part of the section broadly to mean that a court may make a distributive award under R.C. 3105.171(E) or "another provision of" R.C. 3105.171.

{¶33} But this ignores the unambiguous language of R.C. 3105.171(D). As always, we must read the statutory text as a whole rather than " 'pick[ing] out one sentence and disassociat[ing] it from the context.' " *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 9, quoting *Black-Clawson Co. v. Evatt*, 139 Ohio St. 100, 104, 38 N.E.2d 403 (1941). Furthermore, we must "abstain from inserting words where words were not placed by the General Assembly." *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 220, 631 N.E.2d 150 (1994), citing *State v. S.R.*, 63 Ohio St.3d 590, 594-595, 589 N.E.2d 1319 (1992). In the context of the statutory scheme, R.C. 3105.171(D) unambiguously establishes a rule requiring disbursement of a spouse's separate property to that spouse. This rule, of course, is subject to an exception for distributive awards issued under R.C. 3105.171(E).

{¶34} We find nothing in the magistrate's decision to justify a distributive award under any part of the statute. There is no finding that a distributive award was made to facilitate, effectuate, or supplement the division of marital property. *See* R.C.

3105.171(E)(1). Nor is there any determination that a division of marital property was impractical or burdensome, therefore warranting a distributive award. *See* R.C. 3105.171(E)(2). And nothing suggests that Husband failed to disclose assets to Wife. *See* R.C. 3105.171(E)(5).

{¶35} Finally, the statute is clear—distributive awards "do not constitute payments of spousal support." R.C. 3105.171(A)(1). The magistrate's decision ambiguously found that Husband "would have been available to pay support and $923.56 for [the child's support and tuition]." But the child-support worksheet showed Husband's child-support obligation to be $0. Because there was a $0 child-support obligation, the distributive award could have been construed as spousal support, which is improper under the statute.

{¶36} In sum, the decision suffers from multiple errors. The court failed to identify, or designate, the money inherited by Husband as marital or separate property. And without any evidence of financial misconduct by Husband, the distributive award was improper under R.C. 3105.171(E)(4). The court's desire to provide financial support to Wife to balance Husband's future inability to pay child support is understandable. And a distributive award may be justified under R.C. 3105.171. But as currently written, the decision does not comport with the statutory requirements. We sustain Husband's second and third assignments of error and remand the matter to the domestic relations court to determine what property is separate, and to distribute the parties' property consistent with this opinion.

### III.  Conclusion

{¶37} The domestic relations court's parenting-time order was a reasonable and warranted exercise of discretion considering the circumstances surrounding Husband's conviction and incarceration. But the domestic relations court abused its

discretion when it issued the distributive award under R.C. 3105.171(E)(4). We therefore affirm the domestic relations court's parenting-time order and reverse the distributive award. We remand the case to the domestic relations court to reconsider the division of assets and properly determine whether a distributive award is appropriate.

Judgment accordingly.

**MYERS, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.